**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **THOMAS F. ALGEO, M.D.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 05-CV-734-JHP-FHM** |
| | ) | |
| **MASSACHUSETTS MUTUAL LIFE** | ) | |
| **INSURANCE COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER AND OPINION

Upon its own motion, the Court raises the issue of the Court's subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1447(c). Because the Court concludes that the Notice of Removal fails to establish the requisite amount in controversy, the Court ORDERS that this case be remanded to the District Court of Tulsa County.

## Background

The present action involves claims for declaratory judgment, breach of contract, and bad faith by Plaintiff Thomas F. Algeo, M.D. against his insurer, Defendant Massachusetts Mutual Life Insurance Company, relating to the latter's handling of insurance claims under two disability policies—9221486 and 9312499. On February 25, 2005, Plaintiff submitted a claim for disability benefits. After the respective waiting periods passed, Defendant began paying income replacement benefits to Plaintiff of 100% of the amount permitted by each policy—$1,500 for Disability Policy 9221486 and $ 4,500 for Disability Policy 9312499.

Defendant's payments were based upon its calculation of Plaintiff's average monthly income. The policies provide a formula for calculating Plaintiff's average monthly income that

is based upon the higher monthly average income for either (1) the twelve month period preceding disability or (2) any consecutive 24 month period in the five years preceding disability.  Based upon information provided by Plaintiff, Defendant chose the latter measure based upon Plaintiff's average monthly income while employed at St. John's Medical Center. Because of Plaintiff's high average monthly income, Plaintiff continued to receive 100% of the benefits available under each policy even after returning to work on a part-time basis in July 2005.

In September 2005, Defendant learned that Plaintiff's employment with St. John's Medical Center had ended as a result of Plaintiff being placed on probation by the Oklahoma Board of Medical Licensure and Supervision for unethical behavior.  Concluding that the decline in Plaintiff's monthly average income after leaving St. John's Medical Center resulted from Plaintiff's probationary status rather than his disability, Defendant recalculated Plaintiff's average monthly income based upon Plaintiff's earnings subsequent to his departure from St. John's Medical Center.  The recalculation resulted in a lower average monthly income and a corresponding decrease in the amount of the benefits payments that Plaintiff received under both policies.

On November 14, 2005, Plaintiff filed the present action against Defendant in the District Court for Tulsa County.  In his Petition, Plaintiff alleged that Defendant's recalculation of Plaintiff's benefits in violation of the terms of the policies and Defendant's failure to conduct a bona fide investigation before doing so constituted both a breach of contract and a breach of Defendant's obligation of good faith and fair dealing.  (Pl.'s Petition 7.)  In his prayer for relief, Plaintiff requested "a judgment...declaring his rights under two disability policies and awarding him actual damages in an amount exceeding $10,000, and an award of punitive damages in an

amount exceeding $10,000."[1]  (Pl.'s Petition 8.)

Fifteen days later, Defendant filed its Notice of Removal pursuant to 28 U.S.C. § 1441.

Five days later, Defendant filed its Answer.  In addition to denying Plaintiff's claims, Defendant

raised a counterclaim for declaratory judgment.  In its counterclaim, Defendant alleged that

Policy 9221486 had lapsed in December 2004 for failure to pay premiums, and that Plaintiff's

application for reinstatement of the policy contained fraudulent misrepresentations relating to

medical treatment and substance abuse.  (Def.'s Answer 8-9.)  Defendant also alleged that

Plaintiff's subsequent claim for benefits in February 2004 under Disability Policy 9221486

related to a preexisting condition and was barred by the terms of the policy.  (Def.'s Answer 10-

11.)  As a result, Defendant sought a judgment from the Court discharging Defendant from any

liability relating to Disability Policy 9221486.  In accordance with its position, Defendant ceased

paying benefits on Disability Policy 9221486 in December 2005 (Joint Status Report of 8/25/06,

at 10), although Defendant continues to pay Plaintiff disability benefits pursuant to Disability

Policy 9312499.

The Court notes that Plaintiff has not objected to the Court's subject matter jurisdiction.

Nevertheless, "[s]ubject matter jurisdiction cannot be conferred or waived by consent, estoppel,

or failure to challenge jurisdiction early in the proceedings."  *Laughlin v. Kmart Corp.*, 50 F.3d

871, 873 (10th Cir.1995).  Instead, "if the parties fail to raise the question of the existence of

jurisdiction, the federal court has the duty to raise and resolve the matter."  Id.  Moreover, 28

U.S.C. § 1447(c), which governs procedure after removal, explicitly contemplates such an

---

[1] Oklahoma pleading rules generally require that "[e]very pleading demanding relief for damages in money in excess of Ten Thousand Dollars ($10,000) shall...set forth only that amount sought as damages is in excess of Ten Thousand Dollars ($10,000), except in actions sounding in contract." Okla. Stat. tit. 12, § 2008(2).

occurrence by providing that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  Thus, the Court, on its own motion, now raises and addresses the issue of its subject matter jurisdiction in the present case.

### Discussion

"Except as otherwise expressly provided...any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant...to the district court of the United States...embracing the place where such action is pending."  28 U.S.C. § 1441(a).  Defendant contends that this Court has original jurisdiction over this action based upon 28 U.S.C. § 1332, which provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states."  28 U.S.C. § 1332(a)(1).  The record in this case establishes that Plaintiff is a citizen of Oklahoma and Defendant, a corporation organized and with its principle place of business in Massachusetts, is a citizen of Massachusetts.  *See* 28 U.S.C. § 1332(c)(1) ("For the purposes of [§ 1332]...a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business.").  Thus, the Court is left to determine whether the amount in controversy exceeds $75,000.

In *Laughlin v. Kmart Corp.*, the Tenth Circuit set forth the framework by which courts should measure whether the amount in controversy requirement has been satisfied:

The amount in controversy is ordinarily determined by the allegations of the complaint, or, where they are not dispositive, by the allegations in the notice of removal. The burden is on the party requesting removal to set forth, in the notice of removal itself, the 'underlying facts supporting [the] assertion that the amount in controversy exceeds

[$75,000].'"  Moreover, there is a presumption against removal jurisdiction.

*Laughlin*, 50 F.3d at 873 (citations omitted) (quoting *Gaus v. Miles, Inc.*, 980 F.2d 564, 567 (9th

Cir. 1992)).  As *Laughlin* makes clear, the amount in controversy "must be affirmatively

established *on the face* of either the petition or the removal notice."  *Id*. (emphasis added).

Moreover, "at a minimum...the jurisdictional amount [must] be shown by a preponderance of the

evidence."  *Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1290 (10th Cir. 2001), cert.

granted, 544 U.S. 998 (2005) and aff'd, 546 U.S. 132 (2005).  As the Tenth Circuit observed in

*Martin*, "defendant's right to remove and plaintiff's right to choose his forum are not on equal

footing; for example, unlike the rules applied when a plaintiff has filed suit in federal court with

a claim that, on its face, satisfies the amount in controversy requirement, removal statutes are

construed narrowly."  Id. at 1289-1290.

In his Petition, Plaintiff's requests actual damages in excess of $10,000 and punitive

damages in excess of $10,000.  As Defendant correctly notes, Plaintiff's Petition "seeks

monetary damages in an unspecified amount."  (Def.'s Notice ¶ 9.)  Because the amount in

controversy is not affirmatively established on the face of Plaintiff's Petition, Defendant bears

the burden to set forth in its Notice of Removal sufficient underlying facts to support its assertion

that the amount in controversy exceeds the jurisdictional limit.  *See Barber v. Albertsons, Inc.*,

935 F. Supp.1188, 1192 (N.D. Okla.1996) ("[T]he plain language of *Laughlin* requires a

removing defendant to set forth, in the removal documents, not only the defendant's good faith

belief that the amount in controversy exceeds [$75,000], but also facts underlying defendant's

assertion.").

In support of its contention that the amount in controversy exceeds $75,000, Defendant

first notes that "[t]he amount of benefits from September 2005 to [December 2005] which

[Plaintiff] claims to be due is approximately $8,250." Def.'s Notice ¶ 11.  Accepting Defendant's estimate at accurate, the amount owing under the policies at the time of removal clearly failed to exceed the amount in controversy requirement of $75,000.  Without more, Plaintiff's request for accrued benefits cannot support Defendant's contention that the amount in controversy exceeds $75,000.

Defendant also asserts that "the amount in controversy is satisfied on the basis of [Plaintiff's] claim for punitive damages." (Def.'s Notice ¶ 13.)  In support of its assertion, Defendant cites Oklahoma law governing punitive damages, observing that "punitive damages may be awarded in an amount up to $500,000 without regard to the amount of the underlying actual damages where the insurer has intentionally and maliciously breached its duties to act fairly and in good faith with any individual insured"and "[p]unitive damages may also be awarded in an amount up to $100,000 without regard to the amount of the underlying damages where the insurer has recklessly disregarded its obligation to deal fairly and act in good faith with any individual insured." *Id.*  Nevertheless, absent any facts tending to show that such an award would be justied or likely in this case, however, Defendant's "conclusory statements regarding punitive damages are insufficient to meet the burden of showing underlying facts supporting the requisite jurisdictional amount." *Lightle v. Hartford Ins. Co. of Midwest*, No. 06-CV-0140-CVE-FHM, 2006 WL 1047061, *2 (N.D. Okla. April 19, 2006). *See also Flowers v. EZPawn Oklahoma, Inc.*, 307 F. Supp. 2d 1191, 1200 (N.D. Okla. 2004) ("Defendants' statement that '[p]unitive damage awards in Oklahoma can be extremely large, even in individual cases where compensatory damages are relatively small'...do[es] not meet defendants' burden to show underlying facts supporting the jurisdictional amount.").  To find otherwise would require this Court to engage in pure speculation.

Finally, Defendant asserts that "[d]ue to the fact that the validity of Disability Policy 9221486 is in controversy based on certain misrepresentations and omissions [Plaintiff] made in the Policy reinstatement application...his Petition places in issue future benefit payments in an amount in excess of $75,000." (Def.'s Notice ¶ 12.)  However, neither Plaintiff's Petition nor the state court record provide any evidence supporting Defendant's assertion that the validity of the Disability Policy 9221486 was in controversy at the time of removal.  Instead, Defendant's argument appears to be made in anticipation of the counterclaim for declaratory judgment and related defenses that Defendant raises in its Answer.

As a general rule, "in an action to recover accrued installments, the action must be remanded if the amount due on the date of removal did not satisfy the jurisdictional amount requirement." *Bowman v. Iowa State Travelers Mut. Assur. Co.*, 449 F. Supp. 60, 62 n.1 (E.D. Okla. 1978) (quoting C. Wright, Federal Courts 152-53 n. 37 (3d ed. 1976)).  As noted above, Defendant's estimate of the amount accrued ($8,250) clearly fails to satisfy the amount in controversy.  Nevertheless, "future benefits payable under a contract of insurance may be used to compute the amount in controversy for jurisdictional purposes...when the validity of the insurance policy itself, and not merely the presence or absence of conditions measuring the insurer's liability thereunder is the matter in dispute." *Id*. at 61. Because Plaintiff's Petition raises no challenges to the validity of Disability Policy 9221486 itself and instead seeks a determination of rights under, and damages for violation of, the policy terms, Defendant's argument seemingly presupposes that its subsequent counterclaim seeking recision of Disability Policy 9221486 is sufficient to place the validity of the policy at issue.

In *Bowman*, the defendant argued that the validity of the disability insurance contract was at issue based upon "its affirmative defenses (1) that the allegedly disabling injury to plaintiff

was sustained prior to the effective date of the policy, and (2) that plaintiff misrepresented his medical condition when he applied for insurance." *Id*. at 61.  Rejecting defendant's suggestion that its affirmative defenses placed the validity of the policy at issue, the court noted that "the grounds for removal must inhere in the plaintiff's claim, rather than in a defense or counterclaim."[2] *Id*. at 62 (quoting 14B CHARLES ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE AND PROCEDURE § 3721).  Instead, the court found that "[n]either the state court petition nor the removal petition put the validity of the insurance contract in issue." *Id*.

The decision in *Bowman* finds support in other jurisdictions.  Indeed, "the majority of courts in other circuits have held that the amount in controversy for removal purposes is to be determined solely by referring to the plaintiff's complaint and without regard to any subsequently filed counterclaims." *Conference Am., Inc. v. Q.E.D. Intern., Inc.*, 50 F. Supp.2d 1239, 1242 (M.D. Ala. 1999) .  In addition, a number of legal commentators have reached a similar conclusion.  *See* 14C CHARLES ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE AND PROCEDURE § 3725 ("The traditional rule [in removal cases] has been that no part of the required jurisdictional amount can be met by considering a defendant's counterclaim."); Joseph E. Edwards, Annotation, *Determination of requisite amount in controversy in diversity action in federal district court involving liability under, or validity of, disability insurance*, 11 A.L.R. FED. 120 § 2[b] ("[A]n insurer, confronted with an action...for accrued disability benefits in an amount below the requisite federal jurisdictional amount, should be aware that it has been held,

---

[2] The Court recognizes that Defendant's Notice of Removal does explicitly rely upon a counterclaim or affirmative defense as placing validity Disability Policy 9221486 at issue.  The Court, however, finds no facts in the record justifying a distinction between a case like *Bowman*, where the defendant argues that the policy's validity is at issue because of the counterclaim or defense itself, and one like the present case, where Defendant argues that the policy's validity is at issue because of facts that may only be asserted through a defense or counterclaim.

for purposes of removal...that the validity of the policy, as concerns jurisdictional amount, cannot be put into issue by a counterclaim.").  For this reason, one commentator has noted that "[a]s an alternative to removal proceedings, insurer's counsel, confronted with the above situation and being convinced that the validity of the policy is an issue, should explore the possibility of bringing its own action in the federal court for the cancellation of the policy." Edwards, *supra*, § 2[b].

Moreover, even if the Court was inclined to consider Defendant's counterclaim as placing the validity of the contract into question, the fact that Defendant removed the case to this Court before filing a counterclaim precludes any reliance by this Court on Plaintiff's counterclaims.  *See Dresser-Rand v. Northern Natural Gas Co.*, No. 99-4165-SAC, 2000 WL 286733, at *2 (D. Kan. Jan. 19, 2000) (rejecting "the proposition that removal jurisdiction may be based on the value of claims that are not of record when the notice of removal is filed"); *Martin Pet Products (U.S.) Inc. v. Lawrence*, 814 F. Supp. 56, 58 (D. Kan. 1993) (holding that "[defendant's] counterclaim had not been filed at the time of removal and cannot serve as the basis for later establishing [the] court's jurisdiction").  Indeed, Defendant admits that it began withholding payment because of the alleged invalidity of Disability Policy 9221486 in December 2005, after Plaintiff filed his Petition in state court and after Defendant filed its Notice of Removal.  (Joint Status Report, 8/25/06, at 10.)  Thus, the first independent act of Defendant placing the validity of the policy itself, rather than the correct measure of Plaintiff's benefits thereunder, in dispute occurred after removal.[3]

---

[3] The Court recognizes that the parties may not cure a defect in jurisdiction after removal. Nevertheless, the Court notes that, although both parties in subsequent motions have debated the appropriateness of Defendant's decision to withhold all payments on Disability Policy 9221486, Plaintiff has never amended its Petition to include claims for breach of contract or bad faith based upon Defendant's post-Petition actions.

Instead, given the presumption against removal and the requirement that removal statutes are to be narrowly construed, the Court concludes that the limited factual allegations on the face of Defendant's Notice of Removal are insufficient to establish by a preponderance of the evidence that the amount in controversy in this action exceeds $75,000.  The Court therefore concludes that it lacks subject matter jurisdiction over this action and must remand the case to state court pursuant to 28 U.S.C. § 1447(c).

## Conclusion

Fore the foregoing reasons, the Court hereby orders the Court Clerk to remand this case to the District Court for Tulsa County.

IT IS SO ORDERED this 17th day of November 2006.

James H. Payne
United States District Judge
Northern District of Oklahoma